60-386 Illinois Nuerospine Institute, P.C. v. Leon Carson Attorney for the Plaintiff Appellant, Illinois Nuerospine Institute, P.C. v. Leon Carson 60-386 Illinois Nuerospine Institute, P.C. v. Leon Carson In this case, the plaintiff's motion to vacate was not verified and was not supported by his affidavit. He was therefore entitled to find in Motion 4A to reduce his guilty and had to suspend state action on separate charges. In addition, the Unlawful Commodity, the phrase for which I use in most of the testament was going back to 214.01, was outstandingly inappropriate, none of the attesting to matters outside the record. And that matter proceeded to a hearing on the response filed by Illinois Narrowspine, requesting that the court deny the motion on the basis that it was inconsistent with the mandates of 214.01 and the court's finding in pedia and did not satisfy the requisite burden placed upon a petitioner under 214.01. The issue for the court is whether the 214.01 petition was sufficient to invoke the trial court's jurisdiction to vacate the default judgment entered against the defendant after the expiration of 30 days. Illinois Narrowspine believes that the trial court erred in granting relief from the final judgment pursuant to 216. Let me stop you for a moment. Isn't the big issue here is the fact that the defendant failed to show due diligence in presenting his defense? Well, absolutely, Your Honor. I mean, isn't it that every case since before this section, when we had the writ of coram nobis and we didn't even have a 1401 or 1402 petition, you had to show due diligence? Yes, Your Honor, absolutely. Due diligence. Unless there was fraud. Correct. And there's no allegations of fraud here, is there? There are no allegations of fraud, especially the allegations of other unfairness, which is to credit to the defendants, they do claim that this was unfair to them. However, this was not unfair, and there is no showing of due diligence. But isn't that unfairness even something that rises more to the level of unconscionability, even though the courts have the equitable power under 1401? Precisely. There's a little more than just unfairness at play, isn't there? In order to succeed in 1401, you need more than just unfairness or I should have had a shot. And the record that is properly before the court shows that this was not unfair, but it is unconscionable unfairness. And specifically in heirloom, the Supreme Court addressed the issue, and they said in upholding that even once we remove from the equitable powers, they are still there, but it's not meant to be an excuse to allow a defendant to get another chance. And specifically the court said the relief from 21401 is not available to a person who disregards court proceedings on the gamble that better results could be obtained through other procedures or at a cheaper cost. Well, his argument is going to be that he wasn't diligent because he was overwhelmed with the other lawsuit that was pending. And what else? Well, that's essentially it, that there was another lawsuit, a personal injury lawsuit, and they have a claim that this is a balance billing, the workers' compensation claim, which we also dispute. But none of those defenses were ever properly before the trial court because there was no affidavit to assert that basis. We don't have the workers' compensation settlement agreement, which would have said one of these claims were allowed and compensable under the Compensation Act, so that never came in. And the unfairness of being overwhelmed, he doesn't say that in his petition. He doesn't say it in his reply. They argue in their response brief in this case that they were overwhelmed that he had the case with the counsel, but the record doesn't support that. First of all, the affidavit filed in reply states that the first time he saw the contract which he agreed to pay the balance of the bill was on January of 2016 when he was served. Was it attached to the initial complaint then or not? I believe it was, and certainly he says it was. He was served with the complaint. He doesn't contest that. He does not contest that he was served with the complaint. He was served with the complaint in January. The matter was up. No one appeared. It was continued for a default presentation. On the date it was continued for default presentation, Judge Sherlock wasn't available, so Judge Taylor continued it to a new date. A new notice was given to the second date, and thereupon the proof of was entered, and notice was served. There is no objection saying I didn't get this, I wasn't served or was served somewhere else. He admits that he did get it, and he admits that on January 16th, according to his affidavit, he received the, it's the first time he saw it, and yet in April 15th. You know, but one thing he does say is the fact that there was a $20,000 payment made that he wasn't given credit for. What do you have to say about that? Well, that's false, Your Honor. He was given credit. If Your Honor looks to the They just don't refer to it as a payment from the workers' compensation settlement. But they do say that he was given a credit of being that amount of money. They just don't refer to it as part of a, part of the proceeds that came from a workers' compensation settlement. There is a spreadsheet that shows the charges, gives credit for payments, and then uses what I think is the standard prove-up language in most cases. If they're applying all just credits, this is the amount on the balance that's due. And, in fact, Your Honor, to further question the fairness of what they knew about it, in January 2016, there was also in the record the, they filed the physician's lien that was filed that was served on the counsel. So this concept that they were overwhelmed, that there was nothing they could do, is the lie about the fact that he had a lawyer who had a copy of a physician's lien which says, hey, we're looking for money from you in this case. He was served with a complaint. Presumably, if you're served with a complaint and you have a lawyer, you're going to have your lawyer, got it, Mr. Thomas Murphy, the attorney, filed an affidavit in the reply brief only in which he states that he tried to contact the woman in NeuroSpine and Dr. Ronald Michael and didn't receive a response. So that shows they knew that something was going on, yet they didn't choose to come in and contest it. And this was a gamble. We don't know why they didn't come in, but I think logic would indicate that if you're trying to get an $800,000 settlement and part of that settlement includes a $98,000 outstanding medical bill and also the- Well, how do you know that? I don't know that, Your Honor. I'm making a presumption. And we don't know that because of the failure by Mr. Carson. I mean, on this workman compensation case, did it ever go to arbitration? We don't know. Okay. And we don't know because they have an affirmative obligation to take matters outside of the record. And if Your Honor does know what's in the record, there was an e-mail from me to Mr. Murphy that they attached to the initial response in which I say, do you have, if this is a worker's compensation settlement case, can you provide me with a copy of the settlement agreement that would have been entered, to which there was no response. So the record requires, and what 1401 requires, is that they produce, by a competent affidavit, any facts that they intend to use to dispute their, to prove their diligence. And they don't do that. And so when, if this was a worker's compensation case and there should have been a credit, it's incumbent upon them to come in and say, hey, you were paid, and we're going to file an answer and we're going to deny it. They didn't do that. And they didn't do it, I think, strategically, but the record doesn't show that. And the record doesn't show that because they never established their defense. Specifically, Your Honor, when the legislature abolished the writs in favor of the statutory remedy, the courts placed in what they repeatedly considered a comprehensive structure for moving to vacate petitions beyond 30 days. And that comprehensive structure requires the three elements. The existence of a meritorious defense is only one of the three elements. The other two elements, due diligence in presenting the defense, completely silent. There is no response, no facts, no allegations. And there was never an evidentiary hearing? There was no evidentiary hearing, Your Honor. The matter was. . . Is an evidentiary hearing required? It should be required, Your Honor, which is why we additionally raise the argument in our brief that the court's summary determination based only upon the response stating that this was insufficient as a matter of law was insufficient to constitute a vacater. So should we vacate and reverse this or should we send it back to the trial court to have an evidentiary hearing? What do you think we should do? I think, Your Honor, we should vacate and reverse and dismiss, deny the relief because the petition is inadequate.  That's the language that this Court has used in Padilla v. Vasquez. And in several other cases, it's the same language that's been adopted by this Court, that if the petition is based upon allegations outside the record in the underlying case where the default was entered or the judgment that's being sought to be vacated is entered, that is insufficient as a matter of law if it is not attached by an affidavit establishing those facts. The only counsel to clarify the standard of review here, so if what you're saying is that the petition was technically insufficient, they relied on things outside the record that as a matter of law they couldn't do, that sounds like a de novo review? Yes, Your Honor. But if we're talking about whether the contents of the petition should have persuaded the judge or should not have persuaded the judge and should persuade us or not, that's an abuse of discretion, right? Yes, Your Honor. The Court has, in recent years, has considered this to be a two-part analysis. When the issue on appeal is simply a matter of law, which we posit that the insufficiency of the pleading is simply a matter of law, it requires that de novo review. Abuse of discretion, however, even if that is the standard under the, what they call the heirloom standard, which is the abuse of discretion, there was no evidentiary hearing. But even then, the facts never got before the judge properly because there was no affidavit. So there's a procedural threshold that simply was never crossed. And it is an abuse of discretion for the trial court to grant a summary finding vacating the judgment where there is no, but in situations like that, I would like an outright reversal, Your Honor, but if the court were to remand, it would require an amended pleading. Yes. Isn't your main concern here that due diligence is not in any of the documents? Yes. There's no statement that there was due diligence in responding to the complaint and then no due diligence once the judgment was entered. Due diligence in presenting the 1401. Yes. Excuse me. Yes, Your Honor. There are two elements of due diligence. Due diligence in presenting and due diligence in bringing the 1401 petition. And both, on both matters, there's complete silence by the, by Mr. Carson. Your Honor, in the time that I requested for rebuttal, it's expired. May I please yield and reserve my appearance? Yes. Thank you. Mr. Henry. Mr. Henry. All right. Now we'll hear from Mr. Lee. Good morning, Mr. Lee. Good morning again, Your Honor. Good morning. May it please the Court, I don't believe there was any abuse of discretion here by the trial court. The petition that was filed by Mr. Carson in this case apprised the court. Well, let me ask you this. You know, this is the major issue. How do you get away with vacating something without showing due diligence? I mean, how do you do that? Well, if justice requires it. Whenever the case is saying when justice requires it, there's always been a fraud. I don't see any allegations of fraud here. Well, actually, if you look at the Haley case or the Bonanza case or the Elfman case, we're talking there about the plaintiff recovering an amount of money that the plaintiff was not entitled to. Yes, but all of those are extreme matters that could be distinguished. Well. And here, you know, you don't have that here. Well, we do because the extreme matter here is that if any one of the defenses raised in the petition are proved at trial in this case, the plaintiff would be entitled to recover either nothing or considerably less than the plaintiff recovered by way of default judgment in this case. Well, what is your meritorious defense here? Our meritorious defense is the Workman's Compensation Act. It's clear from the allegations of the petition and from the affidavits that were submitted in this case that payment was made to the plaintiff from Mr. Carson's workman's compensation settlement. Twenty thousand only. Twenty-seven thousand, I believe it was. Yes, Your Honor. And what they claim they gave you credit with. Well, now, that's kind of an interesting question because the complaint that was filed before Judge Sherlock made no mention whatsoever of any pending workman's compensation. Did he mention no credit? Was there, I mean, are you suggesting that when they said that taking into account all credits that that wasn't the credit from the payment that was received? I'm suggesting that that wasn't identified as a payment received from workman's compensation settlement. But either way, it was a credit, was it not? It was a credit. And where else did it come from? Well, it could have come from a number of different places. The point I'm trying to make is that to Judge Sherlock, there was no mention of this payment being made from a workman's compensation settlement, which I assume would have triggered in his mind. Yeah, but that's not answering Justice McBride's question. The question is if they show a $20,000 credit, you're saying you didn't get credit, then where did that credit come from? That's a simple question. It is a very simple question. Now, can you answer it? Yeah, I answered it again. I'll answer it again. The credit that they're stating is a credit that must have come from the workman's compensation settlement, but there was no identification of such. And if it did come from the workman's compensation settlement, then under the workman's compensation settlement, the provider would not be entitled to a balanced bill, you know, for such a payment. If 1401s are going to be granted based on a simple unfairness concept, is that really the law? Doesn't there have to be something more here? Forget fraud. Unconscionability. Unconscionability. What would you say is unconscionable about this case? What's unconscionable is a default judgment for close to $100,000 against... What, medical bills that totaled over $100,000? That's unconscionable? That was the workman's compensation statute indicates the provider is not entitled to. Well, what about... That's what's unconscionable. But what about the requirement that you set that out in an affidavit when you're relying on matters outside the record? Is that inaccurate when Mr. Henry said you're relying on matters outside the record? Well, Mr. Carson did indicate in his affidavit that he did make a payment to the plaintiff out of his workman's compensation settlement. So did Mr. Murphy in his affidavit. And wasn't that actual amount the same amount that the doctor said you got a credit for? But there's a significant difference, Your Honor. The difference is that mere mention of $27,000 is one matter. Mention of $27,000 coming from a workman's compensation settlement is a completely different matter. And why is it a completely different matter? It's because the statute, workman's compensation statute, indicates that. And you know what? I think that all goes to your meritorious defense. Yes, it does. But the real issue here is did – was it established that he was diligent in defending the case? And was he diligent once the judgment had been entered in bringing the matter to the court? And the explanation was or is that he was overwhelmed with the third-party complaint against the grocery chain and whoever else. Was that enough? That wasn't the only explanation. His other explanation was that he believed that his payment – Oh, yes. That he believed that his payment to the plaintiff out of his workman's compensation settlement satisfied that obligation. So that's what was indicated. So what case then, Mr. Green, would you suggest we look at to support those things as supporting due diligence? In other words, what is your best case in your theory? My best case in my theory is the Haley case and the Bonanza case and the Elfman case. Those are my best cases in this situation. You know, another thing that bothers me about your petition is this. On a medical case, the medical provider has to prove that the charges are fair and customary. Nowhere do you allege that these were not fair and customary charges. Nowhere. And you keep referring to the Workman Compensation Act. The Workman Compensation Act, you know, doesn't give you any support because in a workman compensation case, there's no showing that this went to arbitration. There's no showing that the bills were not found fair and customary. There's no showing of any of that. And you don't even allege it. I mean, wouldn't that be a simple thing that you'd have to allege and say, hey, they're trying to buffalo me here somehow that these charges are not fair and customary? You don't say that anywhere. You don't attach an affidavit from another health care provider to show that those charges are not fair and customary. But, again, the issue is not the fairness or customary nature of those charges. The issue is whether the Workman's Compensation Act precludes a recovery of the difference between those charges But the Workman Compensation Act only precludes it when the arbitrator and the commission has found that the charges are not fair and customary. And there's no evidence that it even got that far. The only evidence is that there was a settlement. So your interpretation of the statute is incorrect. Okay. Do you think there should be an evidentiary hearing? Actually, no evidentiary hearing was requested in this case. The court proceeded to rule on the petition on the basis of the written submissions in this case. There's nothing in his order that says he determined due diligence, is there? There's nothing in this order to indicate that, nor is there a report of proceedings from the hearing. Right. So we can't plead anything from the record about that other than the order itself, which doesn't say anything about pleading the elements under 1401. I do want to address briefly the due diligence issue, if I may, and particularly the second part of the due diligence issue. That is the due diligence in filing the petition to vacate. The petition to vacate in this case was filed two days after execution was made on the judgment. At the earliest on the record, based on the record in this case, notice of the judgment itself, as opposed to the notice of approval and notice perhaps of the default order, entry of the default order, was not provided until October the 5th, which is when counsel provided Mr. Murphy with a copy of the default judgment. So the petition was filed roughly two to three weeks after those e-mails forwarded,   which is when counsel provided Mr. Murphy with a copy of the default judgment to Mr. Murphy, and only two days after execution. So I think in terms of that aspect of the diligence issue in this case, and there's nothing in the record, there's absolutely nothing in the record to demonstrate service notice of the default judgment on either Mr. Carson or Mr. Murphy, who was not at that point representing. But Mr. Carson acknowledged that he received the complaint and summons. He was certain. Oh, absolutely. He did. Doesn't the record show that there was communications between the doctor's office and Mr. Murphy? They were still looking for their money. Wasn't that really why there was a communication going on? No. Actually, that's contested. Plaintiff indicates there were communications going on between them and Mr. Murphy. It wasn't about money. It usually is, isn't it? Well, Mr. Murphy indicated in his affidavit that no conversations took place. He attempted to get in touch with Dr. Michaels, and Dr. Michaels would not return his telephone call. He couldn't leave a message. So there's a dispute in terms of those communications that you're referencing, Your Honor. Well, weren't the bills part of the damages aspect of the lawsuit, his treatment? I mean, can we at least infer that much? Yes, absolutely, Your Honor. But, again, I'm reverting back to the failure to even mention the workman's compensation claim or the workman's compensation payment to Judge Sherlock. Judge Sherlock, again, was the judge who not only entered the initial default judgment, but he was the very same judge who granted the petition to vacate. Without stating any reasons. Well, there's no record of proceedings. No, but he entered an order. He entered an order. There's nothing in the order. And there's nothing in the order that says anything about it. But I don't feel that there's any requirement. No, I'm not saying it is. I'm just saying there's nothing in this order that sheds any light on the reasons he allowed the vacature. Nor is there any recorded proceedings. And typically what I see is either the judge indicates the basis for his or her ruling in the order or you see it in the actual report of proceedings, the transcript. We have no recorded proceedings in this case. Anything else you want to add? I think that's about it. Yeah, that's all I have to add, Your Honor. I ask that the Court affirm the trial court. Thank you. Thank you. Mr. Henry, a brief response. Thank you, Your Honor. To clarify some matters of record on the timeline, the case settled on October 5th, 2016. October 5th, 2016, according to the record of page 107. And then because then we knew that Kogan and Bauer had money, there was a citation to the law firm that was filed against them. And that's when they were surprised that this objection or argument, rather, that Mr. Carson didn't receive the statutory certificate or did not receive a copy of the order is not in the record at all. He doesn't raise that objection, didn't raise it in his petition, didn't raise it in his response. And it was sent. There is no basis for the Court to infer otherwise. The credit was given. It's in the complaint. It's in the record of page 2 and 3. The default judgment that was entered was entered, and all of the necessary approval documents are also attached in the record. And they show that there was all sufficient notice that was given. But simply put, this case shows that there was no statement by Mr. Carson, by his counsel, which establishes any basis for meritorious, excuse me, any basis for the due diligence elements. It's simply silent. And it is, therefore, facially deficient. And such was the case in Padilla, and such is still the case here, that in the Padilla case, the husband seeking to vacate a judgment against him did not attach an affidavit at all. The Court said, hey, there's no affidavit. You're relying upon all these factual arguments. These are not going to be deemed admitted, as they would in a summary hearing, for simply not answering them, which is a possibility. We are going to find that they, it's insufficient as a matter of law. And likewise, this case is insufficient as a matter of law, and the petition should be reversed, such was the same case in Parth. In response to their best case, which they indicated was the Hale case, Your Honor, the Hale case is actually a case that supports the position of the appellant. In the Hale case, the Court determined that despite the defendant's failure of due diligence still requires that a party relying on 214.01 must show that the failure to appear was because of an excusable mistake and not because of its own fault or negligence. There's simply no showing in this case. Also, in the Hale case, the meritorious defenses were buttressed by multiple affidavits, which there are no affidavits here to establish the elements of their meritorious defense. Similarly, in the Elstman v. Evans and Buss case, which they cited to the Court, in that case it was unconscionable because they were only seeking $259 in damages, according to the ad danum of the complaint, and then they sought some factor multiple times that amount at the prove-up stage. And they said that was unconscionable. We asked for and we were granted the amount that we put into the complaint. That's what Judge Sherlock granted, and that should remain the law of this case. And, Your Honor, as we ask that you reverse the decision and you reverse the vacator or alternatively that it be remanded for at an evidentiary hearing. Thank you, Your Honor. Pardon. Thank you both. The case was well argued and well briefed. We will take it under advisement. At this time, we're going to take a brief recess to change panels for the next.